**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

LASHUNDA T., o/b/o J.P.,[1]

        Plaintiff,

    v.                                   **DECISION AND ORDER**
                                                      21-CV-6692-A

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    Plaintiff Lashunda T. ("Plaintiff") brings this action on behalf of her minor son, J.P., seeking review of the Commissioner of Social Security's final decision that denied Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 8, 10), and Plaintiff filed a reply (Dkt. No. 11).

    The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Pollard v. Halter*, 377 F.3d 183, 188-190 (2d Cir. 2004) (summarizing the standard of review and the three-step sequential

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial only, in accordance with this Court's Standing Order issued November 18, 2020.

evaluation process that Administrative Law Judges ("ALJs") are required to use in making disability determinations concerning an individual under the age of eighteen); *see Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75-76 (2d Cir. 2009) (same); *Ryan v. Comm'r of Soc. Sec.*, 21-2947-cv, 2022 WL 17933217, 2022 U.S. App. LEXIS 35637, *2-3 (2d Cir. 2022) (summary order) (explaining in detail the third step); *see also* 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. §§ 416.924 and 416.926a.  For the reasons that follow, the Court finds that substantial evidence supports the final decision of the Commissioner denying Plaintiff's application for SSI under the SSA.  That decision is hereby AFFIRMED.

## PROCEDURAL HISTORY

Plaintiff applied for SSI on behalf of J.P. on October 23, 2019 when he was five years old, alleging disability due to his attention deficit hyperactivity disorder ("ADHD") and asthma, with an alleged disability onset date of March 1, 2018.  T. 64, 201-207, 215-223.[2]

Plaintiff's application was initially denied in February 2020, and again upon reconsideration in July 2020.  T. 110-117, 124-135.  After requesting a hearing and when J.P. was six years old, Plaintiff and J.P. appeared with an attorney and testified at a telephone hearing on December 22, 2020.  T. 58-90, 160.  The ALJ issued an unfavorable decision dated February 1, 2021.  T. 13-22.

---

[2] "T. __" refers to pages of the certified administrative transcript at Dkt. No. 7, specifically the pagination located in the bottom, right-hand corner of the transcript, not the pagination generated by CM/ECF in the header.

In his three-step analysis which arrived at a finding that J.P. was not disabled, the ALJ found at step one that J.P. was a preschooler at the time the application was filed and a school-age child at the time the decision was rendered, and he was not engaged in any substantial gainful activity. At step two, he found that J.P. had a severe impairment of ADHD and a nonsevere impairment of asthma. Finally, at step three, he found that J.P. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled, the severity of a listed impairment. *See* T. 13-22. In his step three analysis of whether J.P.'s impairments functionally equaled the Listings, *i.e.*, assessing J.P.'s functioning in the six domains,[3] the ALJ found J.P. had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others; and no limitations in moving about and manipulating objects, the ability to care for himself, and health and physical well-being. T. 19.

The ALJ ultimately found Plaintiff not disabled within the meaning of the SSA. Plaintiff requested review by the Appeals Council, but her request was denied. T. 1-7. This action seeks review of the Commissioner's final decision. Dkt. No. 1.

## **DISCUSSION**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record

---

[3] A child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain and meets the duration requirement of the SSA. A "marked" limitation is "more than moderate but less than extreme, and interferes seriously with a child's ability to independently initiate, sustain, or complete activities," while an "extreme limitation" is "more than marked and interferes very seriously" with those abilities. *Encarnacion*, 568 F.3d at 75, quoting § 416.926a(e)(2)(i) and § 416.926a(e)(3).

and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

Plaintiff asserts two points of error: (1) the ALJ erred in not ordering a consultative psychological examination, thereby failing to properly develop the record; and (2) the Appeals Council erred in rejecting educational records that described J.P.'s current school accommodations.

**I.   Psychological Consultative Examination**

In a rather conclusory fashion, Plaintiff contends that the ALJ abdicated his duty to develop the record when he failed to order a psychological consultative examination. Plaintiff reasons that an in-person examination was "critical" under the circumstances, where the ALJ found J.P. had a severe mental impairment of ADHD, and where the only opinion evidence from a source who had personally interacted with J.P. was in a questionnaire filled out by his first-grade teacher—and that teacher taught J.P. virtually via Zoom and indicated she was unable to provide an accurate opinion of his functioning. The Commissioner responds that the record was sufficiently developed for the ALJ to render his decision on disability, and the ALJ was under no obligation to order a consultative examination.

"Even when a claimant is represented by counsel, it is the well-established rule in [the Second] [C]ircuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citations omitted). However, there is a "flip-side of this same proposition" (*Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999)), as "the ALJ's duty to develop the record is not limitless" (*Will v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 421 (W.D.N.Y. 2019)). When "there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5, quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). "Whether the ALJ met the duty to develop the record is a threshold question before determination of whether the ALJ's conclusions are supported by substantial evidence[.]" *Miller v. Comm'r*, 18CV450, 2019 WL 3780085, 2019 U.S. Dist. LEXIS 135623, *10 (W.D.N.Y. Aug. 12, 2019) (internal quotation marks and citations omitted).

With respect to consultative examinations, "[t]he ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014); *see* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added). "However, an ALJ is not required to order a

5

consultative examination if the facts do not warrant or suggest the need for it." *Daniel G. v. Comm'r of Soc. Sec.*, 1:20-CV-0969, 2021 WL 4150086, 2021 U.S. Dist. LEXIS 173558, *8 (W.D.N.Y. Sept. 13, 2021) (internal quotation marks omitted). "On the other hand, it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision." *Phelps*, 20 F. Supp. 3d at 402 (internal citation omitted).

Here, it bears noting that the ALJ asked Plaintiff's counsel at the hearing whether there were any missing records. *See* T. 65. Plaintiff's counsel responded that all requested records had been submitted. *See* T. 65. The ALJ then followed up by asking if Plaintiff's counsel had any other "statements or requests" before he began the hearing, to which Plaintiff's counsel responded, "No, your honor." T. 66. At no time at the administrative level did Plaintiff's counsel request a consultative examination. *See, e.g.*, T. 276-279 (prehearing memorandum).

Plaintiff argues that because this case involved a mental impairment, an in-person psychiatric examination of J.P. was "even more critical" to adequately evaluate J.P.'s functioning, and the absence of an in-person examination warrants a remand. In support of her argument that an in-person examination is required, Plaintiff relies on the Court's holding in *Ransome v. Colvin*, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016) ("[I]t is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient.") (internal quotation marks and citations omitted).

6

However, the Second Circuit has held that "[t]he report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Frye v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) (summary order). In addition, *Ransome* is distinguishable on the facts. *See Marc W. v. Comm'r of Soc. Sec.*, 1:20-CV-1121 (WBC), 2021 WL 2435651, 2021 U.S. Dist. LEXIS 112042, *16 (W.D.N.Y. June 15, 2021) (holding the plaintiff's reliance on *Ransome*'s holding was "misplaced," as "[t]he state agency consultant in *Ransome* speculated about the effect of the plaintiff's former drug abuse and alcoholism, leading to the conclusion that the ALJ erred in giving great weight to that opinion."); *Davis v. Comm'r of Soc. Sec.*, 18-CV-6519S, 2020 WL 1983916, 2020 U.S. Dist. LEXIS 73466, *11 (W.D.N.Y. Apr. 27, 2020) (same).

In this case, the ALJ found opinions by the non-examining State agency psychiatric consultants K. Prowda, M.D. and A. Chapman, PsyD "somewhat persuasive." T. 21; *see* T. 94-95, 104-105. Plaintiff does not fault the ALJ's analysis of Drs. Prowda's and Chapman's assessments.

Both doctors opined that J.P. had less than marked limitations in attending and completing tasks and caring for yourself, and no limitation in the remaining functional domains. The ALJ reasoned that their opinion J.P. had less than a marked limitation in caring for himself was both (1) unsupported by the record, citing hearing testimony that J.P. could dress and feed himself, and put away his own toys (*see* T. 69, 75-76); and (2) inconsistent with Plaintiff's admission in the function report that J.P.'s ADHD did not affect his habits or ability to take care of his personal needs (*see* T. 232). The ALJ agreed, however, with finding a less than marked

7

limitation in attending to and completing tasks, as consistent with Plaintiff's testimony that J.P. has difficulty focusing.  T. 21, see T. 78.  Furthermore, while Drs. Prowda and Chapman found no limitations in acquiring and using information and interacting and relating with others, the ALJ found greater limitations (less than marked) in those domains.

Instead of critiquing the ALJ's evaluation of the persuasiveness of these opinions from non-examining sources, Plaintiff only stresses that the record is devoid of a medical opinion from an examining source.

"Where, however, 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] [functional domains],' . . ., a medical source statement or formal medical opinion is not necessarily required[.]"  *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 8 (2d Cir. 2017) (summary order), quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order); see *Daniel G.*, 2021 U.S. Dist. LEXIS 173558, at *11 ("An ALJ's . . . determination is not fatally flawed merely because it was formulated absent a medical opinion.").

Moreover, because the instant claim was filed after March 27, 2017, the amended regulations regarding the evaluation of medical evidence apply, and "the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion . . . Of the five factors the ALJ is to consider in evaluating the persuasiveness of medical opinions, consistency and supportability are the most important."  *Victor B. v. Comm'r of Soc. Sec.*, Case #20-cv-1154-FPG, 2021 WL 3667200, 2021 U.S. Dist. LEXIS 155327, *6 (W.D.N.Y. Aug. 17, 2021) (internal quotation marks and citations omitted).  In other

words, "[t]he new regulations place an emphasis on supportability and consistency, rather than the examining relationship with Plaintiff." *Id.* at *7, citing 20 C.F.R. § 404.1520c(b)(2).

In this case, Plaintiff neglects to analyze the opinions of non-examining State agency psychiatric consultants discussed above, which the ALJ appropriately assessed in accordance with the new regulations. Plaintiff also fails to mention the mental status examination performed by therapist Holly Corcoran, LMHC, on December 4, 2019, as part of J.P.'s intake for counseling at Liberty Resources Behavioral Health Clinic. *See* T. 335-345, 436-446 (duplicate). During that examination, Ms. Corcoran found J.P.'s appearance, build/ stature, posture, activity, affect, perception, thought control, cognition or impairment, insight, and insight all "WNL" ("within normal limits"). She also noted his cooperative attitude toward the examiner, average eye contact, euthymic mood, clear speech, logical thought process, and lack of hallucinations or delusions, and estimated that he had average intelligence. The ALJ referenced a number of these normal examination findings in assessing the six domains (*see* T. 20-21, citing Ex. 6F, pp. 15-16, and Ex. 9F, pp. 9-10), in conjunction with unremarkable findings from examinations performed by J.P.'s pediatrician (*see* T. 20-21, citing Ex. 2F, pp. 2, 9, and Ex. 8F, pp. 11, 32).

There is other evidence in the record providing additional support for the ALJ's determination that J.P.'s impairments did not meet or functionally equal a listed impairment. For example, Plaintiff stated in her function report that if J.P. had his ADHD medication, he was "able to stick to tasks" (T. 232), and although she stated his ability to communicate was limited, she indicated he was able to perform

9

the examples of age-appropriate communication listed in the form (T. 229). In a questionnaire filled out by Plaintiff specifically regarding J.P.'s asthma, Plaintiff stated that because of J.P.'s ADHD he has issues with sitting still, listening, and paying attention "for long" if his medication "isn't given." She also indicated any issues with school attendance or performance were tied to whether his medication was "out" or not given to him. *See* T. 237. Moreover, medical records from J.P.'s pediatrician suggest that J.P.'s ADHD symptoms generally improved in response to medication, which he began taking in July 2019. J.P.'s pediatrician increased the dosages and adjusted the timing of its administration in response to Plaintiff's description of J.P.'s symptoms and updates on how he was doing. *See, e.g.,* T. 298, 302, 322-323, 324-325, 358-359 ("Pt. appears to be well controlled with his ADHD, on current dose of medication."), 454 ("Mom did restart medication and feels his impulsivity and ADHD symptoms appear more manageable being on medication."), 460.

Nevertheless, Plaintiff also insists a psychological consultative examination was required because the December 3, 2020 teacher questionnaire filled out by J.P.'s first grade teacher lacked supportability. *See* T. 466-473. In assessing his functioning across the six domains, the teacher rated J.P. as having a "slight problem" in acquiring and using information and attending and completing tasks. She further assessed no problems in interacting and relating with others and moving about and manipulating objects. However, questions on the form were left blank, and her assessments were accompanied by the following caveat: "The 2020-2021 school year began 100% remote learning. [J.P.]'s video and microphone are usually

off.  I did consult with a teacher that worked in his kindergarten classroom.  The answers are based on this information.  The answers may not be as accurate as if we were in school." T. 468; *see* T. 322 (noting J.P.'s school closed in mid-March 2020 due to the COVID-19 pandemic).

Despite the apparent problems with the questionnaire, Plaintiff does not articulate how the teacher's opinions were inconsistent with the other evidence of record supporting the ALJ's finding of no limitations or less than marked limitations in the six domains.

The Court concludes that the record, while not robust, contained "more than a mere scintilla" of evidence regarding Plaintiff's functional abilities.  It is apparent from the ALJ's analysis that he considered the record as a whole (as he must) in determining whether J.P. had a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain.  The Court concludes that a psychological consultative examination is not necessary, as Plaintiff "has not established beyond conclusory assertions that the record was insufficient for the ALJ to make his determination."  *Kaliegh O. v. Berryhill*, No. 5:17-CV-960 (CFH), 2018 WL 4054098, 2018 U.S. Dist. LEXIS 144196, *27 (N.D.N.Y. Aug. 24, 2018) (internal citations omitted).  Moreover, while there may be evidence in the record to support a contrary conclusion, the ALJ's role as the factfinder was to determine persuasiveness, and the Court will not assume that role.

## II.    Evidence Submitted to the Appeals Council

Plaintiff argues that the Appeals Council provided only "perfunctory and boilerplate reasoning" of why it denied Plaintiff's request for review after the ALJ

11

issued his unfavorable decision. Plaintiff's request for review was accompanied by evidence including J.P.'s Section 504 Accommodation Plan, 504 Plan Summary Report, and 2020-2021 report card for the first two quarters of first grade, *see* T. 27-34, which Plaintiff argues were essential to full development of the record and should have been accepted by the Appeals Council. However, the Appeals Council determined that this additional evidence referred to by Plaintiff "d[id] not show a reasonable probability that it would change the outcome of the decision," and therefore, it did not consider and exhibit that evidence.[4] T. 2.

"Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez*, 77 F.3d at 44. "Evidence is 'new' when it has not been considered previously in the administrative process . . . New evidence is 'material' where it is both relevant to the plaintiff's condition during the relevant time period, and probative . . . The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Stephanie R. ex rel. I.S. v. Comm'r of Soc. Sec.*, Case #1-

---

[4] In addition to the records Plaintiff specifically references in her motion papers, the Appeals Council also rejected, for the same reason, a 2018-2019 summary concerning J.P.'s pre-kindergarten program. *See* T. 35-39. Because Plaintiff includes no argument regarding these records, the Court does not address them herein.
    The Appeals Council further rejected records of J.P.'s kindergarten report card and student attendance history as it was "not new, because it is a copy of Exhibit 11F," and therefore declined to exhibit that evidence as well. T. 2. The Court agrees they are duplicative of evidence considered by the ALJ (except for J.P.'s student attendance history at T. 46, which only contains additional dates chronicling J.P.'s absences), and therefore no further discussion of those exhibits is necessary. *Compare* T. 43-46 *with* T. 475-478 (Exhibit 11F).
    The remainder of exhibits in this section of the record are merely duplicative of each other. *See* T. 41-42 (duplicates of T. 27-28), T. 47-57 (duplicates of T. 29-39).

19-cv-1037 DB, 2020 WL 7640936, 2020 U.S. Dist. LEXIS 242056, *24 n.3 (W.D.N.Y. Dec. 23, 2020) (internal quotation marks and citations omitted).  It is Plaintiff's burden to show that the evidence presented to the Appeals Council, among other requirements, "has a reasonable probability that it would change the outcome of the ALJ's decision[.]"  *Brianna B. v. Comm'r of Soc. Sec.*, 20-CV-6773S, 2022 WL 2864827, 2022 U.S. Dist. LEXIS 129728, *9 (W.D.N.Y. July 21, 2022), citing 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

It is undisputed that the evidence (*see* T. 27-34) submitted to the Appeals Council in this case was "new."  The parties disagree, however, whether it was "material."

Preliminarily, Plaintiff argues that the Appeals Council was required to give detailed, non-conclusory reasoning for rejecting the new evidence and that failure to do so in itself justifies a remand, citing *Mendez v. Comm'r of Soc. Sec.*, 17-CV-6824 CJS, 2019 WL 2482187, 2019 U.S. Dist. LEXIS 100208 (W.D.N.Y. June 4, 2019).  This issue is unsettled in this Circuit.  *See Lesterhuis v. Colvin*, 805 F.3d 83, 83 (2d Cir. 2015) (per curiam) (declining to explicitly rule on the plaintiff's "alternative argument that the Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ").

This Court has previously addressed an identical argument and rejected it, interpreting the proposition in *Mendez* more narrowly.  *See Shaun L. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-01936-TPK, 2023 WL 355050, 2023 U.S. Dist. LEXIS 11131, *11-12 (W.D.N.Y. Jan. 23, 2023) ("As *Mendez* itself explains, however, that

13

is not a hard and fast rule; it depends in large part on the volume and complexity of the new evidence submitted . . . Courts have often followed the approach . . . of determining whether, in light of the new evidence, the ALJ's decision is nonetheless supported by substantial evidence even if the Appeals Council has provided little or no explanation for its action.").

Indeed, the *Mendez* Court chose one of two recognized approaches in addressing the Appeals Council's conclusory statement.  The Court stated it "might be inclined" to "ignore[ ] the Appeals Council's lack of explanation and simply examine[ ] the additional evidence for [itself] to decide whether the new evidence actually might change the outcome," but because "the additional evidence dated prior to the ALJ's decision consist[ed] of approximately 400 pages, which [was] more than half of the entire administrative record," it opted instead to remand the case for further explanation from the Commissioner.  *Mendez*, 2019 U.S. Dist. LEXIS 100208, at *9-12.  It distinguished the case from those where "the additional evidence was so limited and so clear that remand could only result in one outcome." *Id.* at *10.

In contrast to the situation the Court faced in *Mendez*, here, the new evidence in dispute comprises a mere eight pages of the record. *See* T. 27-34.  As such, the Court elects to assess that limited evidence itself.  Even if the Appeals Council should have discussed this evidence,[5] any error is harmless because the evidence

---

[5] The Court would be hard-pressed to conclude that further explanation was required.  Many out-of-Circuit courts have held no in-depth reasoning is required, *see* Dkt. No. 10-1, pp. 15-16 (collecting cases); the wording of the regulations on their face require only that the Appeals Council notify the parties of its action and do not mention any other information that must be in

did not show a reasonable probability of changing the ALJ's decision.  *See Abate v. Comm'r of Soc. Sec.*, 1:18-CV-0266 (WBC), 2020 WL 4597315, 2020 U.S. Dist. LEXIS 143993, *22-23 (W.D.N.Y. Aug. 10, 2020) ("A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision."), citing *Perez*, 77 F.3d at 45.

Plaintiff argues that J.P.'s 2020-2021 first grade report card, through January 2021, indicted his grades had "fallen," and his Section 504 accommodation plan and summary report (both from October 2020) for that same school year detailed multiple accommodations that were implemented for J.P.  Plaintiff reasons that this evidence was relevant and/or "potentially" relevant to acquiring and using information and attending and completing tasks, and thus the Appeals Council should have considered it because it "*could have changed* the ALJ's findings as to these domains of childhood functioning" (emphasis added).

As previously alluded to, however, the standard for newly presented evidence is higher.  "Where the new evidence predates the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Blash v. Comm'r of SSA*, 813 Fed. Appx. 642, 645 (2d Cir. 2020) (summary order), quoting 20 C.F.R. § 404.970(b).  In other words, the Appeals Council errs in refusing to

---

the denial notice, *see* 20 C.F.R. §§ 404.967, 416.1467, 416.1470, 416.1481; and the Second Circuit has recognized that the Appeals Counsel's "denial of a request for review is analogous to a denial of certiorari" and "does not amount to a consideration on the merits," *Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004).

15

review a decision by the ALJ when the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence," *Rutkowski v. Astrue*, 368 Fed. Appx. 226, 229-230 (2d Cir. 2010) (summary order), and thus "alter[ed] the weight of the evidence so dramatically as to require the Appeals Council to take the case." *Bushey v. Colvin*, 552 Fed. Appx. 97, 98 (2d Cir. 2014) (summary order).

In comparing J.P.'s kindergarten report card with his first-grade report card, it does appear there was a modest decline in his grades. *Compare* T. 475-476 (kindergarten report card, showing "good," and "outstanding" effort in almost every area, and generally "meet[ing] standards" for each academic subject) [kindergarten report card]) *with* T. 27-28 (first-grade report card, showing "satisfactory" effort in almost every single area, and generally "partially meet[ing] standards" in each academic subject). However, J.P.'s first-grade teacher wrote in her attendant comments that while J.P. was performing below first-grade standards, he was "making steady progress" and "working hard" to meet those standards. She also noted he remained focused during live instruction (and when on Zoom meetings would remain on-task if given "some" reminders), participated in class discussion when called upon, "always" did his "best work," asked for assistance when needed, and was a "great help" on Zoom to his teachers and classmates. *See* T. 28.

J.P.'s Section 504 plan for 2020-2021 provided for the following accommodations: (1) prompting J.P. to help him remain focused and on task, (2) seating J.P. in close proximity to his teacher for prompts when he became distracted or off-task, (3) allotting J.P. additional time to process information and respond, (4) administering J.P.'s tests in a small group of 3 to 5 students and in an environment

16

with reduced extraneous noises, and (5) allotting J.P. short breaks (less than 5 minutes) when J.P. began to show signs of frustration during testing. *See* T. 30.

The Commissioner points out that a separate academic record from the 2020-2021 school year (a document that was in the record before the ALJ), recommended the same testing accommodations that are in the Section 504 plan. T. 479. Moreover, in addition to the other evidence of record previously discussed, *see supra*, pp. 7-10, Plaintiff testified at the hearing held in December 2020 (during Plaintiff's first-grade, 2020-2021 school year) that J.P. got "[f]airly good" grades. T. 73. According to Plaintiff, his current teacher communicated that J.P. was doing "pretty good, she just has to give him a few reminders." T. 77. His teacher also conveyed to Plaintiff that J.P. participated and paid attention, aside from the reminders required by the 504 plan, and "[o]ther than that, he's been doing good." T. 78. Plaintiff testified that J.P. was doing well with completing his homework, he would ask for help when he did not understand certain concepts or directions, and his reading and writing were at a first-grade level. T. 79-80. The ALJ weighed this evidence against other evidence in the record, such as J.P.'s history of temper tantrums and discipline problems at school. *See* T. 20.

The Court concludes that the new evidence presented to the Appeals Council did not render the ALJ's decision contrary to the weight of the evidence. As such, remand is not required on this basis.

**CONCLUSION**

For all the above reasons, Plaintiff's motion (Dkt. No. 8) for judgment on the pleadings is DENIED, the Commissioner's cross-motion (Dkt. No. 10) for similar relief is GRANTED, and the Commissioner's final decision is AFFIRMED.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

                                                  __*s/Richard J. Arcara*_____
                                                  HONORABLE RICHARD J. ARCARA
                                                  UNITED STATES DISTRICT COURT

Dated:   February 17, 2023
        Buffalo, New York